Good morning, Your Honor. Joseph Schlesinger for Mr. Duncan. May it please the Court, we're here this morning to discuss two matters. Mr. Duncan's motion to reinstate the underlying appeal from the judgment and conviction of death, a sentence of death, and the appeal from the District Court's retrospective competency determination. Now, it may seem that those matters are pretty separate and distinct, but I think we'll see there's a considerable amount of overlap. Let me ask you the following, and this is, I think, the sticking point for me in terms of the way that your client's argument is preceded. In 2008, your client waived an appeal, and assuming that he was competent when he did that, if nothing else had happened, then any later appeal would be dismissed. That is, he changed his mind in 2010. So let's, assuming a competent person who says, listen, I have no interest in appealing, and comes along two years later and says, well, I've changed my mind, we would dismiss that, correct? Well, we might or might not, Your Honor. Under the cases cited in the motion, Williams v. Boeing and United States v. Arevalo, the Court has discretion to allow reinstatement where there are lingering doubts about the propriety of the prior dismissal. Well, that's walking away from my hypothetical, because in my hypothetical, there's complete competence, there's no question about the competence, and the person comes in and says, well, the lawyer may think that I wanted to appeal, but the lawyer is absolutely flat wrong. I do not, do not allow this appeal to go through, and that person cannot change their mind two years later, right? In that hypothetical, I guess I would agree with that, Your Honor. The reason I was walking away is I think we have some factors that are very, very different. Well, then that seems, that's where the folding into the other issue comes, because you're still questioning whether he was, in fact, competent to make that waiver at the time. Well, I think we don't have to go quite that far. If we look at what happened on remand, we have the district court saying, although Mr. Duncan may be competent, he's clearly a disturbed individual. All the experts for the prosecution testified it was a very, very close case, a thorny issue. He could possibly be delusional. The district court said that he was a person very, with a very, very pitiable background who's clearly troubled by that background. So it's your argument, then, that if he was straight up competent, you would agree that he can't come along two years later because he was pro se at the time or whatever, and renege on the waiver? I think a competent defendant without these kind of problems in a non-death case would be in a lot of trouble in this situation. What you're trying to carve out, then, is in a capital case where the death penalty is at stake, and even if we disagreed with you that the district court erred in finding him competent, even if we agreed that the district court didn't clearly err in going with the government experts, you would still ask us, in this context of a capital case because he is close to the edge, that there is, in fact, an exception for the time limits? And not only that, Your Honor, but we have a very peculiar waiver here. In any way you look at it, there are these long colloquies where Mr. Duncan's saying, I want the system to do what it wants to do. We don't have somebody who's clearly ready to accept their punishment. We don't have someone who wants to die, which makes us different from practically every other waiver case this Court has had in a death case. Can I pursue just a slightly different line of questioning? And this all depends on dates. According to my notes, Mr. Duncan's standby counsel filed a timely notice of appeal on November 17, 2008. Is that correct? That sounds right, Your Honor. I'm sure you're correct. Right away, then, on the 19th, the government moved to strike the standby counsel's notice of appeal. On November 20th, the district court granted that motion. Mr. Duncan purported to withdraw the waiver on the 14th of December, 2010. But then on July 11, 2011, our circuit reversed the district court's order granting the motion to strike, remanded for an evidence-free hearing for competency. And at that time, when we reversed the district court's order, he had already filed a motion to reinstate his prior notice of appeal, which I guess my question is, doesn't that render the competency question moot only for purposes of the notice of appeal and the ability to appeal? That was my position in the earlier appeal, Your Honor. That was in my motion. Right. And it was also in my petition for rehearing and my cert petition. This court deferred a ruling on the motion and said, let's have the hearing first. And I think there are a lot of things about the hearing, in addition to the ones I've already touched on. I guess my concern, and I recognize that that's what was done, but I'm just thinking back that, as a practical matter, our ruling undid the district court's granting of the government's motion striking standby counsel's notice of appeal. And under Grazia Dei v. Grazia Dei, we held in 1994, when we hold an order void, we must, if requested, undo the effect of that order and restore the parties to the status quo ante. So if we did that, would that not, if you will, ab initio, at least at the time that the motion was made by standby counsel, reinstate the order and then open it up so that we would, in effect, be saying, okay, go ahead and let's argue the merits of the appeal. So, of course, the competency hearing would enter into that, not so much in terms of the notice of appeal, but rather his capability of defending himself. Is that correct? I think that was essentially my position, Your Honor. I'm not sure I followed Your Honor's reasoning or explication entirely, but it sounds a lot like what I was arguing. And part of the problem, I think, is we're in a very odd situation, I think, where we say accepting the waiver was wrong, but we'll nunk-pro-tunk and see if we can resurrect the waiver for somebody who doesn't want to waive anymore. We're talking about a first appeal of right in a death penalty. But it's circular, because had the, I mean, we started from the premise that had the initial waiver been completely valid by a completely competent person, it would have been valid. Standby counsel has no right to override the wishes of a competent, you know, pro se defendant. So there would have been, the notice of appeal would have had no effect had he been competent at the time to say, I do not want to appeal. And I think the concern that I have is that our instructions the last time, basically, to the district court were, if the initial waiver and the instruction to counsel not to appeal was competent, that the striking of the appeal should be reinstated. That was our instruction to the district court. And if it was all competently done, I'm not sure what's wrong with that. Well, I've touched on some of it, Your Honor. But it all bears on your view of your client's state of mind. The hypothetical perfectly competent person in this situation, there would be no real issue, it seems to me, if someone said, I do not want my standby counsel to appeal, do not appeal. I think if we understood, really, what he was saying, but we don't. There's all this business about let the system do what it wants to do. He was interviewed by the experts at the remand hearing about the waiver. He says, I don't know why I decided that. Counsel, we're familiar with that. But you're making this so case-specific. I'm still trying to understand what rule you're trying to ask us to adopt, because it's garbled somehow, your client's statements are of the nature, you're saying this is a one-off for Mr. Duncan around the rules? What is the principle that you're asking this for? The principle is the one stated in Williams v. Boeing and U.S. v. Arevalo. If we think there was a problem, and it doesn't have to be clear that the prior dismissal was absolutely invalid, it wasn't clear in Williams v. Boeing. There were just questions about it that led the Court to conclude, especially now that we know a notice, a timely notice of appeal isn't jurisdictional, that the United States had notice. There's been no repose here. The United States has known that this is contested from day one. I think it's 6 years and counting, and we're still not in any position of repose. So you're saying there is we have discretion as an appellate panel to forgive the timeliness, even if he was marginally competent, met the Reese test, and that's so we should exercise discretion? I don't know if I would put it, forgive the untimeliness, Your Honor, but I follow what you're saying, and my answer to that would be yes. I know we don't have too much time today. I think I'd better move on to the competency determination itself, unless there are other questions about this. Judge Graber, you were talking a minute ago about what this Court told the district court to do, and I think that's very interesting because when you look at the final paragraphs of the prior opinion, this Court said there should be a hearing to find out why Mr. Duncan wants to waive appeal. Is it these somewhat rational things that come up? I'm not sure it said why. I think it was whether he was competent to do so. The reason why is not really for us to decide. Well, the Court flagged certain questions about document 613, the post-appeal affidavit, where the Court said some of the things he says sound kind of rational, but there's an awful lot that sounds completely rational. Right. And that has to do with whether or not he was competent, not what his reasons were, were he competent, because people can have all kinds of reasons that don't matter. Right. But if he has one of these bizarre reasons that the Court pointed to, that very well goes into whether he's competent or not. What's our standard of review with respect to the competency finding? For the factual finding, for the factual components, the purely factual components, it's clearly erroneous. Our argument that the Court misconstrued Reese v. Payton, which affects both prongs of the Reese test, the does he have a mental disorder, disease or defect, because the finding was he has one, but not enough to render him incompetent. So the Reese problem affects both prongs, and that part's de novo. A finding based on a misapplication or a misunderstanding of the governing principles is not subject to the clearly erroneous test. But even under the clearly erroneous test, I think this is absolutely clear that the District Court clearly erred. The Court didn't look at what Mr. Duncan was saying about the epiphany. It just paraphrased document 613 in a very sanitized version, a version that this Court had already said was not the clear interpretation of that document. The Court didn't explore at all why he was seeking to waive, if that in fact is what he was doing. Essentially, what we have is a 66-page description of the fact that Mr. Duncan can make some rational decisions in some areas, but nothing about whether the decision whether or not to appeal based on the truth and the epiphany and his special role in bringing epiphany to the world is based on rational decision-making at all. So essentially, the Court skirted the whole issue based on its misunderstanding of Reese v. Payton. It thought the only question was, is he capable of some competence, some competent decision-making? Of course he is. We know about the planning involved in the crime, and we know about his voir dire and all that. But when somebody believes death doesn't matter if I — not if I die, but if I don't involve myself in the process, somehow society is going to be transformed in a way that cannot happen unless I do that. The Court, in the concluding paragraph, suggested that maybe Mr. Duncan's religion was part of this, and the government had ample opportunity to put on information about religion, and there's nothing in there. Mr. Duncan is agnostic. The experts said his belief system is highly extreme. It doesn't fit any organized religion. Counsel, how are we to evaluate — in other words, by what standard are we to evaluate the competing views of the experts? They could not be reconciled, obviously. I mean, on the one hand, you have the defense experts who — for whom this is absolutely clear that your client simply is not competent. On the other hand, the government produced some very competent witnesses who said, for purposes of this proceeding is perfectly competent. The district court called the decision. He agreed with the government. He felt that the defense witnesses were prejudiced, biased, and he didn't believe them. So by what standard are we to review the district court's decision with respect to the credibility and reliability of the witness — of the experts? Well, there's a tremendous amount of that argument in the brief on both sides in excruciating detail. I agree with that. But what's the standard? But as to I believe them, I saw his demeanor on cross, that sort of thing, that's clearly erroneous. But that doesn't mean it's a rubber stamp. The expert opinions and the district court's opinion stands or falls on believing this version of the epiphany that's just, I thought it was a better idea not to kill the girl and turn yourself in. But don't the experts and don't you have to go through the points made by the district judge, the findings, if you will, and refute them or at least argue why they're wrong rather than just a broad overbrush about why Mr. Duncan is not competent in your view? Well, the findings are wrong because that is not a reasonable interpretation of the epiphany. Mr. Duncan goes on and on and on. And who gets to decide that? This court can decide that if it has a firm and definite conviction that the district court was wrong on that. And that's just as plain as day. In other words, you're saying that if we were to believe the government's experts, that we would just be plain wrong. It's not just the experts, Your Honor. It's all the information. There's 17 witnesses about what Mr. Duncan says, what he says in his own words. And remember, the prosecution experts, for the most part, didn't say he doesn't have a disorder. They say we didn't see it. And one of them spent less than an hour with him. All of the government's witnesses spent a total of 10 hours. The defense experts spent close to 50 hours with him. And the prosecution experts didn't interview him for the relevant question. They never talked to him about the waiver of appeal, except for Dr. Resch, who the government had to walk away from because his interview provides some of the best evidence of Mr. Duncan's incompetency. I see I only have about a minute and a half left. Yeah, you may save that, certainly. Thank you, Your Honor. We'll hear from the government. May it please the Court. Good morning, Your Honors. My name is Wendy Olson. I represent the United States in this case, along with other lawyers. I was counsel for the government during the capital sentencing hearing and during the retrospective competency hearing. Your Honors, I'd like to start this morning in the same place that the Court inquired of Mr. Schlesinger. And that's with respect to Mr. Duncan's December of 2010 letter to this Court, indicating that he wanted to withdraw his earlier waiver of appeal. And it's the government's position that that letter does not provide a basis for this Court to allow an appeal to proceed, that it provides neither a factual nor a legal basis for the appeal to proceed. And with respect to this particular issue, I'd like to start with the Court's prior order in this. And the appeal waiver, excuse me, just so we're clear, includes the letter to the Court of November 15, 2008. That's correct. That's correct, Your Honor. This is to inform the Court that if any appeal is initiated on my behalf, it is done contrary to my wishes. That's correct, Your Honor. And in this case, there is an unusual amount of information regarding the defendant's whether he wanted to appeal. There's the letter to the Court. There are the defendant's statements during the November 24, 2008 hearing. And there was the post-conviction affidavit that the defendant filed with the Court. And it was unusual, Your Honors, because typically in a situation, a defendant need not affirmatively waive his right to appeal. He simply doesn't file a notice of an appeal. In this case, however, because this defendant was acutely aware that his standby counsel, who were not representing him at the time, wanted him to appeal and were likely to file something with the Court, he elected to send that letter prior to the Court's hearing on November 24, 2008. I think the government provided to the Court in its supplemental excerpts of record the discussion that Mr. Duncan had with Special Agent Mike Janecka, in which he described his standby counsel's efforts to come into his jail cell and encourage him forcefully to file the notice of appeal, an account that was corroborated by State Defense Counsel John Adams, who was there with his Federal standby counsel in early November of 2008 when they made that visit. So it was very – I think the record is very clear that in November of 2008, this defendant did not wish to appeal. And the instruction, of course, as this Court knows, that it gave to the district court, to Judge Lodge, was to hold a fulsome hearing, which the Court did, that lasted over 23 days, and heard from a great number of witnesses. He watched them testify, reviewed transcripts, had the benefit of the briefing of both parties. And some 10 months after the hearing was held, he issued his decision finding the defendant competent, and as directed by this Court, he reinstated that order. So we know now that the defendant, in November of 2008, was competent. And it's the government's view that under Mason, Exrell, Marson, and this Court's prior order, that's the only issue on which counsel independently had standing. And it's the government's view that the defendant's desire to waive appeal at that time must be given effect if he was competent. That's why the hearing was retrospective. Competence was that limited subject, that limited subject on which counsel had standing to appeal on their own. And so the inquiry, in the government's view, as this Court framed it, is done. I think also, Your Honor, Your Honors, that allowing defense counsel now to seek review based on the defendant's letter some two years after November of 2008, would render that retrospective competency hearing meaningless and without effect. And it would also create perverse incentives if the Court were to allow an appeal after defense counsel, and especially here after standby counsel, filed a notice of appeal against a defendant's wishes. It would first contradict established precedent. The Supreme Court in Roe v. Flores-Ortega established that the counsel must follow a defendant's decisions with respect to appeal. It would also undermine the defendant's fundamental right to make the decision, which the Supreme Court set out in Jones v. Barnes. And finally, it would waste time and resources. Courts would have to proceed with unauthorized appeals unless a defendant somehow notified the Court that he didn't really want to appeal. And, Your Honor, I'm not, Your Honors, I'm not sure what authority would provide a different result in this because it is a capital case. I think we see in Gilmore v. Utah and Whitmore v. Arkansas that competent defendants can waive their right to appeal, even in a capital case. And the district court's findings in this case are not simply that the defendant was a little bit competent, it is the defendant was competent. I'd like to turn now to the issue that counsel addressed with respect to whether the court used the correct legal standard. And I think there's no doubt that Reese v. Payton, a 1966 Supreme Court case, provides the legal standard. And that standard is, does the defendant have the capacity to appreciate his position and to make a rational choice whether to continue or abandon further litigation or whether he has a mental disease, disorder, or defect that substantially affects his capacity in the same? Counsel, I think that the defense suggests that the Roomba case, which, of course, is a Fifth Circuit case that interprets Reese, is incorrect and that its three-step approach is wrong. Will you address that? Is Roomba, in effect, the same thing as Reese in this case? Yes, Your Honor. I will address that, and the answer is yes. As the district court itself said on pages 4 and 5 of its opinion, supplemental extracts of records 6 and 7, Reese is the governing standard. But in order to apply it, it was going to use the three-step analysis set out in Roomba v. Precunier. And then I think significantly, in footnote 2 of his order, which is on SER 7, is page 5 of the district court's order, the district court explicitly stated that the Roomba analysis employs the Reese standard and that the court's determination was the same under either analysis. And Roomba itself, that Fifth Circuit case, makes clear that its three-step analysis was applying the Reese standard. It states at page 398 that it quotes Reese v. Payton. It says the test is whether he has capacity to appreciate his position and make a rational choice with respect to a continuing or abandoning further litigation, or on the other hand, whether he is suffering from a mental disease disorder or defect which may substantially affect his capacity in the premises. It cites to Reese, and then its very next sentence is, this test requires the answer to three questions. So I think there's no doubt that the Roomba court was trying to find a way to analyze the Reese v. Payton standard and to do so in a way that's useful to district courts. The question is that Reese talks about substantially affect, and the Roomba test arguably narrows that down, so it has to actually be decisive. And substantially affect is a qualitative difference than an all or nothing. And this case seems to raise the question. I think that's in essence part of the counsel's argument is that if you apply substantially affect, it's hard to say that his disorder, even if it's a personality disorder as the How do you bridge that argument? Well, Your Honor, I would certainly agree with you that the phrases substantially affect and prevents, those are different words. But I think, Your Honor, in this context, when you're looking at what impact a mental disease disorder or defect has on a person's ability to make a rational choice and to appreciate his legal position, that there is not a meaningful difference. That if a mental disease disorder or defect substantially affects a person's ability to do those things, then he can't do them. It's the same as if it prevents him from doing it, he can't do it. So I think really it gets at the same thing. And I think also, Your Honor, that's how courts, district courts that have used the Roomba v. Pecunia three-step analysis and the courts of appeal that have affirmed those decisions have looked at that. And importantly, Your Honor, those second and third prongs, the second and third questions in Roomba v. Pecunia only come into consideration once the district court determines that there is a mental disease disorder or defect. Here the district court said at most there was, and he did use the term qualified major mental disease disorder or defect. He credited, as he's entitled to do, having watched them testify, considered the cross-examination of both sets of experts. He credited the court-appointed experts who at most determined that there was a antisocial personality disorder or a narcissistic personality disorder. And I think when you look at, for example, this Court's opinion in Dennis Exrell Butko v. Bittker, I think is the last part of that, and there's a footnote that discusses Roomba v. Pecunia, and it says, you know, we, the district court used this standard, we ordinarily, you know, we haven't really adopted it, but we're aware that the lower courts use those interchangeably. And again, that's how district courts have, and that's how the district court here has used that. They've used it interchangeably. And even the district court's opinion later on, he does use substantially affects sometimes, he used prevents. But the bottom line is this Court found that there was no impact on the defendant's decision-making abilities as a result of anything that the experts, the court-appointed experts who he credited, found. And he specifically discounted the defense-retained experts on the second and third prongs, the second and third questions, rather, of its use of Roomba v. Pecunia to implement Reese. My problem with your answer remains the same. If they're used interchangeably, that begs the question, which is being imported into the other? And if prevent is being imported into substantially affect when the court meant something different from that? And that's in itself a question. But so it doesn't really resolve the issue. If you treat substantially affect as somehow different from prevent, a lesser situation, then the fact that they're used interchangeably doesn't solve the problem. The question is whether it's consistent with what Reese had in mind. So you've been ---- I understand your argument. It's just, it's a puzzlement, particularly on the facts of this case. Can I follow up with my colleague's comment? Judge Lodge referred to Reese, acknowledged that it was the standard, but he found it helpful, as I understood it, to have an overlay of Roomba. In the 3553A setting, which of course has nothing to do with this, but I pointed out only because in our case law we don't require a district judge to basically other than acknowledge that there is such a standard to go through and tick off each one of the criteria when the judge is sentencing. Does any analogy perhaps apply in this setting where the district judge says, Reese is the standard. I get that. I'm also informed by how people have construed that through Roomba. But are we permitted to, just as we would in a totally different situation, 3553A say, okay, you don't have to tick off all the requirements, you just have to acknowledge the district court is aware that that is the standard. Would that apply here? I think it could, Your Honor. I think that's essentially what this Court did in Dennis. And I apologize to the Court for improperly citing Comber v. Shryo, but I think it happened there. And in Mason. And I think that's what courts of appeal have done with Roomba. And I think, Your Honor, one of the challenges is this. Reese v. Payton, a 1966 case, is exactly five paragraphs long. The last paragraph is, it is so ordered. The fourth paragraph is the only one that gets to the standard. It deals mostly with the procedural posture of why the case is at the Supreme Court. And so then in 1966, it sets out this standard that we've described a couple of times here. And since then, district courts that are having to conduct these competency hearings and put that standard into play have struggled with how to do that. And certainly the district court in Comber v. Stewart, the underlying case that gets to Comber v. Shryo and then the en banc, it used Roomba v. Procunier and went through sort of the struggle that courts have in figuring out how to apply that. And it found, ultimately, that Roomba v. Procunier was useful. And I think the reason is this, Your Honors, and that is because the challenging issue is when you have a defendant who has a mental disease, disorder, or defect. Reason in and of itself is stated, obviously, in the disjunctive. Either you have the capacity or you have a mental disease, disorder, or defect that substantially affects that capacity. If there's no mental disease, disorder, or defect, then it's a relatively easy case. But there are still going to be some of those cases, and these are the cases that the courts have struggled with, where someone has a mental disease, disorder, or defect and is still competent, is still able to appreciate his position and is still able to make a rational choice to continue or abandon further litigation. Kennedy. Can I follow up on this? We have two cases. You've referred to one. One is Comber v. Shryo, a 2006 case, and the other is the Dennis X. Rel. Butko v. Budge. Both of which refer to the Rombaugh standard as a simplified version of the Reese standard. And in Dennis, we noted that the two tests have been, in quotes, referred to more or less interchangeably throughout these proceedings. Does that have any bearing on how we are to treat the district court's use of both Reese and Rombaugh? I think so, Your Honor. I think it describes very well the struggle that these district courts have had, and their ability to try to do, or their effort to try to apply that standard. And I think one thing, if you look at the concurring opinion, I think it's Judge Berzon's concurring opinion in Dennis, she basically says, I wish, if I'm recalling this correctly, I wish we would explicitly adopt Rombaugh v. Procunier. And in reading that, she, I think she views Rombaugh v. Procunier as applying a heightened standard in the sense that it takes a harder look at whether or not someone is competent. And I don't think that's true. In your view, did Comer actually do that? Did Comer actually formally adopt the three-step process? I would not say that, Your Honor. That was the court's words. But I think it was that it affirmed the lower court, and it was Judge Rimer, I think, in that opinion that's now been vacated. You're talking about Budge now, right? Right. I was talking about Budge. And then Budge in the concurring opinion is what Judge Berzon said.  I'm asking a different question. I'm sorry. I may have interrupted your train of thought. Two years later, in Comer, did we then, in essence, adopt the three-question scenario? I think so, Your Honor. Of course, unfortunately, that case has been, for separate reasons, vacated for the en banc opinion. Right. So what is the effect of having something vacated on different grounds? Does it all go away, or are we still bound by the part that is untouched? Well, Your Honor, as I read on Westlaw, it said that no one was supposed to cite to that opinion. So I think it's reasoning. It's gone. I like its reasoning, but I think it's gone. Okay. It was a pretty succinct adoption. If it did, it was in a footnote in the background section of the opinion. So it did it without a lot of debate. I think that's where it was in a footnote in Dennis as well, Your Honor. And I think then Judge Berzon, in her concurring opinion, I think one of the reasons that she was in favor, I think one of the reasons courts have used this is it starts in the hard place. It starts with, does this person have a mental disease, disorder, or defect? And the judge, in his footnote, acknowledged that both parties said Reese is the standard, but I need to start here, or I'm going to start here. And he started with that question, which, as he wrote in his opinion, was the most thoughtly contested thing among the parties, that there were experts on both sides. And he recognized from the outset that one of his tasks in watching those experts testify and reviewing what they had to say was to make determinations between them as to who had the better argument. That was something that he had to do in his task of reaching an opinion as to competency. And the judge then, the majority of his opinion is devoted to that very issue. And for reasons he articulated, and I think for which there is solid support in the record, he found the court-appointed experts to be more persuasive and for their opinions to be grounded, to be better founded than the defense-retained experts. And Mr. Schlesinger spent some time talking about this epiphany and how it was really clear that the judge was wrong on that. And the United States respectfully disagrees. And I believe that Judge Lodge's opinion and his reliance on the court-appointed experts was appropriate in particular with respect to the epiphany. Now, Dr. Kirkish, who had been appointed by the court in Riverside County, and Dr. Rath, also appointed by the court in Riverside County, in particular had discussed the epiphany with Mr. Duncan. And as Dr. Kirkish testified, she found that not to be a delusion because it was grounded in his life experience because he was able to detach himself from it and realize that others might not agree with him. And Dr. Rath described that as him, that it was grounded in the facts of his crime and that it was a sudden realization or insight. They considered the very issues that the defense-retained experts had raised in their report, and they came to a different conclusion. And Judge Lodge described in detail his reasons for crediting the court-appointed experts, including their neutrality, the substance of their testimony, their experience doing this precise thing, competency examinations. And he contrasted that with what the defense experts, the defense-retained experts had to say. I see that I'm out of time. I think that we're out of time. Kennedy, and tended to discredit them because he found them to be part of the defense and biased. And I think that was well-supported, Your Honor. And I appreciate the opportunity to address the Court this morning. Well, you know, I would assume that the defense experts would have some bias in favor of their client. I agree, Your Honor. I think the Court went well beyond that in identifying what the reasons for him finding those biases were. Okay. All right. Thank you, Your Honor. Thank you. You have some rebuttal time remaining. Yes, Your Honor. Thank you. Although there was a lot I would like to respond to in less than a minute and a half, I think I'll have to confine myself to Rumbaugh. I want to be clear. We don't have any problem with this three-step decision tree business. If that helps district courts, that's fine. The problem is the final step was prevent, not substantially affect. But the district court's findings went well beyond that. In the conclusion section, for example, the courts right before the conclusion on page 63, the court said that your client's decision was not motivated, driven, or caused. So, you know, that's quite a bit broader than prevented. And on the following page, I think, or a couple pages later, he just said it didn't have any impact on his decision-making. It said it didn't have any impact on his rational ability. It doesn't say it didn't have any impact. I guess my question is that even though he used that, didn't the district court, in fact, have a broader view? He said didn't prevent no less than five times in the order. He never says didn't substantially affect. And the whole arc of the order is about prevent. It's look at he can do voir dire, look at he can order dinner at the jail, look at how he can plan crimes. Nothing is about this decision whatsoever. It's all about does he lack the capacity for any rational decision-making, and that's our major quarrel with that part of the analysis. And I see I'm out of time, Your Honor. If there are no other questions. I think there are not. Thank you, counsel. The case just argued is submitted, and we very much appreciate the helpful arguments and helpful briefing from both counsel. Thank you, Your Honor. The case is submitted, and we will stand adjourned. Thank you. All rise. Thank you.
judges: Graber, Fisher, Smith